FILED
2018 Oct-30 PM 01:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **RICHARD RADCLIFFE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NUMBER: __________** |
| | ) | |
| **LIBERTY LIFE ASSURANCE** | ) | |
| **COMPANY OF BOSTON,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Comes now the Plaintiff, Richard Radcliffe, and hereby files his Complaint against Liberty Life Assurance Company of Boston.

## PARTIES

1. The Plaintiff, Richard Radcliffe ("Mr. Radcliffe"), is an insured under Long-Term Disability Policy No. GD/GF3-850-288434-01 ("the Plan").

2. Defendant, Liberty Life Assurance Company of Boston ("Liberty"), is the Claims Administrator for the Plan, issued to Rollins, Inc. ("Rollins"). Upon information and belief, Liberty is a foreign corporation doing business in the state of Alabama, specifically within this district.

## JURISDICTION AND VENUE

3. This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, et seq. Plaintiff asserts claims for long-term

disability benefits, enforcement of ERISA rights and statutory violates of ERISA under 29 U.S.C. §1132. This Court has subject matter jurisdiction under ERISA without respect to the amount in controversy or the citizenship of the parties. 29 U.S.C. §1132(a),(e)(1) and (f) and 28 U.S.C. §1131. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(b).

## INTRODUCTION

4. The traditionally held purpose of the ERISA statute is "to promote the interest of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 90 (1983). Mr. Radcliffe, as an employee insured for disability, was supposed to be treated as a beneficiary by the Defendant as statutory fiduciary. Instead, the Defendant has victimized Mr. Radcliffe by engaging in utterly reprehensible claim handling procedures. The shortcomings of ERISA as it relates to claims for "welfare" benefits have been exploited by the Defendant to avoid paying Mr. Radcliffe's valid claim that would otherwise be payable under state insurance law. With no jury trial and no punitive damages, despite the unscrupulous conduct of the Defendant, Mr. Radcliffe's "relief" is limited to the amount of benefits to which he was clearly entitled in the first place, with merely the possibility of interest and attorney's fees. As described in more detail below, the Defendant has clearly engaged in bad faith claim handling and Mr. Radcliffe, at minimum, is patently entitled all relief that ERISA provides.

## STATEMENT OF FACTS

5. Mr. Radcliffe is an insured under the Liberty Life Assurance Company of Boston, No. GD/GF3-850-288434-01, issued to his employer, Rollins, Inc. Liberty is the administrator of the plan. The Policy provides insureds, like Mr. Radcliffe, long-term disability benefits. (*See* LTD Policy, attached hereto as Exhibit "A").

6. Mr. Radcliffe was born on May 24, 1973. He worked at Rollins as a Pest Control Specialist until his disabilities forced him to stop working on or around January 29, 2017.

7. Mr. Radcliffe's medical disabilities include severe, chronic back pain due to lumbar radiculopathy, displacement of lumbar intervertebral disc, and lumbosacral spondylosis. Mr. Radcliffe also suffers from chronic pain and discomfort in his lower extremities. Compounded with the multitude of side effects from his many conditions and medications, Mr. Radcliffe is unable to work in any capacity.

8. Mr. Radcliffe was originally out of work on or around January 29, 2017 due to increased lower back pain that radiated down his lower left extremities. In a consultation with his pain management physician, Dr. Hassan Zakaria, Mr. Radcliffe complained of severe burning, tingling, and swelling in his feet, accompanied by muscle aches in his lower back. Concerned, Dr. Zakaria prescribed Mr. Radcliffe a

new pain medication and ordered an MRI. (*See* Interventional Pain & Spine Progress Notes, dated February 3, 2017, attached hereto as Exhibit "B").

9. The MRI results revealed possible anterolisthesis in Mr. Radcliffe's L5-S1 vertebrae, as well as bulging discs. Ultimately, the MRI physician determined possible degeneration and herniated discs. (*See* MRI report, dated February 14, 2017, attached hereto as Exhibit "C").

10. When Mr. Radcliffe returned to Dr. Zakaria two weeks later, Mr. Radcliffe's pain symptoms did not improve. To better assess Mr. Radcliffe's conditions, Dr. Zakaria ordered a nerve study. (*See* Interventional Pain & Spine Progress Notes, dated February 21, 2017, attached hereto as Exhibit "D").

11. That same day, Dr. Zakaria performed a nerve study and determined possible nerve weakness and neuropathy in Mr. Radcliffe's left lower extremity. (*See* Nerve Study Report, dated February 21, 2017, attached hereto as Exhibit "E").

12. To combat Mr. Radcliffe's pain, Dr. Zakaria began steroid injection treatments. Despite these treatments, Mr. Radcliffe's conditions did not improve. In a consultation dated March 30, 2017, Dr. Zakaria noted that Mr. Radcliffe's back pain was "unchanged," and that his injections only provided temporary relief. Dr. Zakaria also noted that Mr. Radcliffe rated his current pain an 8/10. (*See* Interventional Pain & Spine Progress Notes, dated March 30, 2017, attached hereto as Exhibit "F").

13. One month later, Mr. Radcliffe returned to Dr. Zakaria for to assess the progression of Mr. Radcliffe's pain. Unfortunately, Mr. Radcliffe continued his complaints of lower back pain and pain in his lower extremities. Dr. Zakaria noted that the pain was "acute," "chronic," and "constant." Ultimately, Dr. Zakaria referred Mr. Radcliffe to a spine surgeon. (*See* Interventional Pain & Spine Progress Notes, dated April 25, 2017, attached hereto as Exhibit "G").

14. On May 1, 2017, Dr. Zakaria completed a Restrictions Form, as requested by Liberty. Dr. Zakaria stated that, based on his objective assessment of Mr. Radcliffe's conditions, he could only lift up to ten pounds occasionally and bend infrequently. Dr. Zakaria ultimately opined that Mr. Radcliffe's restrictions were imposed from May 1, 2017 until his next follow up appointment, "at a minimum." (*See* Restrictions Form, dated May 1, 2017, attached hereto as Exhibit "H").

15. The following week on May 8, 2017, Liberty approved Mr. Radcliffe for LTD benefits. Liberty based its decision on the medical evidence presented, as well as Dr. Zakaria's restrictions assessment. (*See* Liberty Approval Letter, dated May 8, 2017, attached hereto as Exhibit "I").

16. Despite his approval of benefits, Mr. Radcliffe continued to suffer from severe, unceasing back pain. On June 9, 2017, Mr. Radcliffe underwent a nerve block procedure. During this visit, Mr. Radcliffe stated that his pain has "restricted [his] social life to [his] home," and that his pain prevents him from sitting, standing,

and traveling for more than one hour. (*See* Interventional Pain & Spine Progress Notes, dated June 9, 2017, attached hereto as Exhibit "J").

17. In July of 2017, Mr. Radcliffe underwent spine surgery, and visited with Ms. Melissa Deleon, NP for a post-operative appointment. Although Mr. Radcliffe stated that his back pain was bearable, he also suffered muscle spasms post-surgery. (*See* Ortho Progress Notes, dated August 3, 2017, attached hereto as Exhibit "K").

18. Two months after his spine surgery, however, Mr. Radcliffe's back pain returned. In an appointment with Dr. Mark McKinley, PT, Mr. Radcliffe complained of lower back pain, weakness, stiffness, and pain radiating down his legs. The physician noted that Mr. Radcliffe had a "decreased cadence in gait" due to pain compensation. (See Ortho Progress Notes, dated September 22, 2017, attached hereto as Exhibit "L").

19. By the end of 2017, Mr. Radcliffe's conditions only worsened as his lower extremity pain progressed to both legs. In a consultation with Dr. Zakaria on December 19, 2017, Mr. Radcliffe stated that his various treatments only provided 50% relief for only a few days and rated his pain a 10/10 at its worst. (*See* Interventional Pain & Spine Progress Notes, dated December 19, 2017, attached hereto as Exhibit "M").

20. Despite overwhelming evidence that Mr. Radcliffe's conditions only

worsened, Liberty determined that Mr. Radcliffe no longer met the policy definition of disabled and terminated his long-term disability benefits by letter dated February 15, 2018. Liberty justified its denial of benefits based off of the updated medical evidence presented, as well as a vocational analysis that purported to show certain occupations Mr. Radcliffe could perform. (*See* Liberty Denial Letter, dated February 15, 2018, attached hereto as Exhibit "N").

21. The vocational analysis stated that occupations were identified for Mr. Radcliffe based on his "education, training, and physical capacities." However, the analysis completely disregards the severity and constant duration of Mr. Radcliffe's pain, and fails to consider Mr. Radcliffe's inability to work in a continuous, full-time setting. Moreover, the vocational analysis completely disregarded the debilitating side effects endured by Mr. Radcliffe from his necessary medications. (*See* Vocational Analysis, dated February 12, 2018, attached hereto as Exhibit "O").

22. Two months after his wrongful termination of benefits, Mr. Radcliffe returned to Dr. Zakaria and continued complaints of pain in his lower back, spine, and legs. Mr. Radcliffe stated that his steroid injections and other treatments relieved him for only twenty-four hours afterwards, and Dr. Zakaria noted that his "targeted pain in the lower back has worsened." (*See* Interventional Pain & Spine Progress Notes, dated May 2, 2018, attached hereto as Exhibit "P").

23. Due to overwhelming evidence that Mr. Radcliffe's conditions only

worsened over time, Mr. Radcliffe appealed his wrongful termination of benefits by letter dated August 13, 2018. Along with his appeal, Mr. Radcliffe included updated medical records, pharmacy records, declarations, and a pain diary. Mr. Radcliffe also explained that his cousin, Kenneth Radcliffe, moved in with him to help maintain general household duties. (*See* Plaintiff's Appeal Letter, dated August 13, 2018, attached hereto as Exhibit "Q").

24. The pain diary included in Mr. Radcliffe's appeal documented over five months of Mr. Radcliffe's pain. Throughout his consistent and often daily entries, Mr. Radcliffe's pain remained severe, and was consistently described by Mr. Radcliffe as "burning", "sharp", "stabbing", and "throbbing". (*See* Pain Diary, attached hereto as Exhibit "R").

25. Despite abundant evidence that Mr. Radcliffe remained disabled and could not work in any occupation, Liberty upheld its termination of benefits by letter dated September 24, 2018. Liberty justified its second denial based off the absurd determination that Mr. Radcliffe had very few restrictions or limitations and could work in a full-time capacity. Liberty also relied solely on the opinions of a paid paper reviewer, who has never even met Mr. Radcliffe. (*See* Final Denial Letter, dated September 24, 2018, attached hereto as Exhibit "S").

26. The paid physician audaciously opined that Mr. Radcliffe, a man suffering from severe, chronic back pain due to lumbar radiculopathy, displacement

of lumbar intervertebral disc, and lumbosacral spondylosis, required only a few limitations and could work in a full-time, sedentary occupation. (*See* Exhibit "S").

27. The physician's determinations completely disregard Mr. Radcliffe's well-documented complaints of pain, and furthermore fail to consider the debilitating side effects of Mr. Radcliffe's necessary medications. (*See* Exhibit "S").

28. Ultimately, and despite abundant evidence to the contrary, Liberty determined that Mr. Radcliffe's exhaustive medical documentation, pharmacy records, declarations, and pain diary did not produce evidence of "severity, frequency, and duration" sufficient to render Mr. Radcliffe disabled from any occupation. (*See* Exhibit "S").

29. Liberty's denial letters are simply an attempt to "cherry-pick" Mr. Radcliffe's medical records for evidence that supports the policy's termination and gives little to no weight to the plethora of evidence that supports Mr. Radcliffe's disability. (*See* Exhibit "S").

30. As of this date, Mr. Radcliffe has been denied benefits rightfully owed to him under the Plan. Liberty's decision to deny benefits under this long-term disability policy was grossly wrong, without basis and contrary to the evidence.

31. Mr. Radcliffe has met and continues to meet the Plan's definition of disabled.

32. The Defendant did not establish and maintain a reasonable procedure or provide a full and fair review of Mr. Radcliffe's claim as required by ERISA. Instead, Defendant acted in its own pecuniary interests and violated ERISA by conducting including but not limited to the following: breaching its fiduciary duty to the Plaintiff; reviewing the claim in a manner calculated to reach the desired result of denying benefits; and failing to properly consider and credit the medical opinions of Mr. Radcliffe's medical providers.

33. Upon information and belief, Liberty evaluated and paid all claims under the LTD Plan at issue, creating an inherent conflict of interest.

34. Upon information and belief, the Plan does not grant discretionary authority to determine eligibility for benefits to Defendant or to any other entity who may have adjudicated Mr. Radcliffe's claim. Therefore, the Court should review the Plaintiff's claim for benefits under a *de novo* standard. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). In the alternative, the denial of Plaintiff's benefits constitutes an abuse of discretion.

35. Mr. Radcliffe has exhausted any applicable administrative review procedures and Defendant's refusal to pay benefits is erroneous, unreasonable, and has caused tremendous financial hardship on Plaintiff.

## DEFENDANT'S WRONGFUL AND UNREASONABLE CONDUCT

### A. Defendant's Determination that Plaintiff does not Meet the Definition of Disability as Stated in the Plan was both Erroneous and Unreasonable.

36. The LTD Plan at issue states, in part:

"Disability" or "Disabled" means:

i. during the Elimination Period and the next 12 months Covered Person reaches the end of the Maximum Benefit Period, as a result of injury or sickness, he is unable to perform the Material and Substantial Duties of his Own Occupation; and

ii. thereafter, you are unable to perform, with reasonable continuity, the Material and Substantial Duties of his Own Occupation.

(*See* Exhibit "A").

37. According to Liberty, Mr. Radcliffe's LTD benefits were approved and paid from May 8, 2017 until February 15, 2018 because Liberty determined that he was unable to perform the material duties of his own occupation. Liberty does not identify any particular reason for choosing the February 15, 2018 termination date and appears to have arbitrarily decided that on the following day Mr. Radcliffe would have the ability to return to work in a sedentary level job, contrary to the medical evidence presented and the opinions of Mr. Radcliffe's treating physicians.

38. On September 6, 2018, Dr. Behzad Emad conducted an Independent Peer Review based on documents provided by Liberty. Dr. Emad noted that the documents provided support the diagnoses of lumbar radiculopathy, disc

displacement, and spondylosis. Dr. Emad claims that Mr. Radcliffe does have some functional impairment, however can somehow perform "full-duty" work. Without examining Mr. Radcliffe in person nor speaking with Mr. Radcliffe's physicians, Dr. Emad concluded that there were only very few restrictions or limitations. Dr. Emad also failed to consider the multitude of side effects from Mr. Radcliffe's medications that inhibit Mr. Radcliffe's cognitive functioning. (*See* Independent Peer Review, dated September 6, 2018, attached hereto as Exhibit "T").

39. Dr. Emad's findings are contrary to the opinions of Mr. Radcliffe's treating physicians. Furthermore, Dr. Emad never personally examined Mr. Radcliffe. Accordingly, Defendant's contention that Mr. Radcliffe failed to prove that he was disabled under the LTD Plan must be rejected.

**B. Defendant's Decision to Deny LTD Plan Benefits was not Supported by Substantial Evidence.**

40. In its consideration of Mr. Radcliffe's claim, Defendant only retained paid consultants to review his file. Defendant bases its denial entirely on the allegation that Mr. Radcliffe's medical records do not demonstrate that his disabilities make him unable to work at his own position, yet it never sought even one independent physical examination. Further, in denying Mr. Radcliffe's claim, Liberty failed to give proper weight to the medical evidence provided by his treating physicians.

41. Mr. Radcliffe's claim file is replete with medical records from his

treating physicians extensively detailing his limitations, both mental and physical. Mr. Radcliffe's physicians' assessments, treatment and medications they prescribed and administered, all demonstrate that Mr. Radcliffe's diagnosed disabilities were extremely debilitating.

42. The records of Mr. Radcliffe's long-standing medical providers, who have no stake in the outcome of the case, clearly evidence that he is disabled based on their numerous personal examinations, testing, and procedures. Liberty's hired medical reviewers, on the other hand, did not examine Mr. Radcliffe. The conclusion that Mr. Radcliffe was not disabled was based merely on hired reviewers' assessment of his paper medical records. *See Hoover v. Provident Life and Accident Ins. Co.*, 290 F.3d 801,809 (6th Cir. 2002)(finding that evidence in the administrative record did not support the revocation of benefits because the only doctors that disagreed with the treating physicians were non-examining consultants hired by the insurance company); *see also Kalish v. Liberty Mutual*, 419 F.3d 501, 508 (6th Cir. 2005)("[w]hether a doctor has physically examined the claimant is indeed one factor that we may consider in determining whether a plan administrator acted arbitrarily and capriciously in giving greater weight to the opinion of its consulting physician").

43. In weighing the opinions of Mr. Radcliffe's providers against those of the independent reviewers retained by Liberty, the Court should consider the following factors: (i) the frequency of examination and the length, nature, and extent

of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) other relevant factors. *See Karanda v. Connecticut Gen. Life Ins. Co., et al.*, 158 F. Supp. 2d 192, 205 and n.8 (D. Conn. 2000) (citing *Durr v. Metropolitan Life Ins. Co.,* 15 F. Supp. 2d 205, 213 (D. Conn. 1998)). The Court in *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 832, 123 S. Ct. 1965, 155 L. Ed. 2d 1034 (2003) recognized that "treating physicians, as a rule, have a greater opportunity than consultants to know and observe the patient as an individual." While *Nord* provides that this Court is not required to adopt a per se rule to treat Mr. Radcliffe's physicians' opinions with more weight than those of Defendant's medical assessors, "[c]ommon sense and a stream of legal precedent suggest, however, factual determinations of a treating physician are objectively more reliable." *Burt v. Metropolitan Life Insurance Co.,* No. 1:04-CV-2376-BBM, 2005 U.S. Dist. LEXIS 22810, at *33 (N.D. Ga. Sept. 16, 2005); *see also Finazzi v. Paul Revere Life Ins. Co.*, 327 F.Supp.2d 790, 795-96 (W.D. Mich. 2004) ("the Court is not obliged to 'rubber stamp' [defendant's] termination of benefits . . .").

44. Paid experts are more often than not pre-disposed or preconditioned. Courts have consistently expressed their skepticism of such "experts" and held their reviews to be the very essence of arbitrariness and capriciousness. *Bennett v. Kemper HAT-Svcs, Inc.* 514 F. 3d 547, 554-55 (6th Cir. 2008); *Montour v. Hartford Life and*

*Acc. Ins. Co.,* 588 F. 3d 623 (9th Cir. 2009); *Regula v. Delta Family Care Plan* 226 F.3d. 1130, 1143 (9th Cir. 2001). The Supreme Court has acknowledged that "physicians repeatedly retained by benefits plans may have an 'incentive to make a finding of "not disabled" in order to save their employers money and preserve their own consulting agreements.'" *Nord,* 538 U.S. 822, 832, 123 S. Ct. 1965, 155 L. Ed. 2d 1034 (2003). The fact that their reports are consistently in conflict with the opinion of treating doctors' determinations should be viewed as evidence of a structurally conflicted process that results in bias. Clearly, in Mr. Radcliffe's case, these decisions indicate that his own medical physicians' evaluations should be afforded far greater weight than those of Defendant, especially since Defendant's reviewers never bothered with even one of the multiple physical exams allowed by the Plan. (*See* Exhibit "A"). Accordingly, Defendant's denial of Mr. Radcliffe's LTD benefits, based on insufficient evidence, was arbitrary and capricious.

45. Mr. Radcliffe's treating physicians, who have no financial stake in the outcome of his claim, reached the opinion that he is disabled based on their numerous examinations of him.

46. The baseless findings of Liberty's non-examining salaried employee physician and consulting physician stand alone as the only findings in Mr. Radcliffe's file suggesting that he is not disabled and are overwhelmed by the numerous treatment records and the opinions of his treating physicians suggesting

the opposite.

47. Accordingly, Defendant's termination of Mr. Radcliffe's Plan benefits was not properly supported.

**C. Defendant's Failure to Properly Credit Mr. Radcliffe's Well-Documented Subjective Complaints of Pain Was Arbitrary and Capricious.**

48. Admittedly, some of Mr. Radcliffe's disabling impairments have subjective components; however, they have been diagnosed by his treating physicians based on his medical history, extensive testing, and physical examinations. Defendant far exceeds its discretion to ascertain Mr. Radcliffe's credibility by characterizing the bulk of his treatment records as somehow flowing from his own subjective reports of pain, and thus equally subject to rejection as non-credible.

49. In *Quigley v. UNUM Life Ins. Co. of America*, 340 F. Supp. 2d 215, 224 (D. Conn. 2004), the Court held "[w]here the record reveals well-documented complaints of chronic pain, and there is no evidence in the record to contradict the claimant's complaints, the claim administrator, and the court, cannot discredit the claimant's subjective complaints."

50. An administrator may not exclude a claim for lack of objective medical evidence unless that standard was made "clear, plain and conspicuous enough [in the policy] to negate layman [plaintiff's] objectively reasonable expectations of

coverage." *Saltarelli v. Bob Baker Group Medical Trust et al.,* 35 F.3d 382, 387 (9th Cir. 1994); *see also May v. Metro. Life Ins. Co.,* 2004 U.S. Dist. LEXIS 18486, *26 (N.D. Cal. Sept. 9, 2004) ("MetLife abused its discretion by requiring that Plaintiff meet an additional requirement for eligibility beyond those imposed by the Plan."); *see also Duncan v. Continental Cas. Co.,* 1997 U.S. Dist. LEXIS 1582, *15-17 (N.D. Cal. Feb. 10, 1997) (finding an insurer improperly denied the claim of the plaintiff, who had fibromyalgia, due to a lack of "objective medical evidence" to support her disability claim).

51. In *Creel v. Wachovia Corp.,* No. 08-10961, 2009 U.S. App. LEXIS 1733, 2009 WL 179584 (11th Cir. Jan. 27, 2009) and *Oliver v. Coca-Cola Co.,* 497 F.3d 1181, 1196-97 (11th Cir. 2007), *vacated in part on other grounds*, 506 F.3d 1316 (11th Cir. 2007), the United States Court of Appeals for the Eleventh Circuit considered when it was substantively reasonable to deny benefits for disabilities involving subjective elements. In *Creel,* the plaintiff applied for disability benefits based on a diagnosis of depression, anxiety, and migraine headaches. She received long-term disability benefits, but the benefits were terminated after twenty-four months pursuant to a mental disorder limitation. She sued the insurance company to recover additional benefits based on her migraine headaches. She provided chart notes, standard diagnoses, and lab reports to support her claim, but the district court entered summary judgment against her because she did not provide objective

evidence. The Court of Appeals vacated the summary judgment order, explaining:

> Our prior cases provide guidance for assessing the reasonableness of benefits denials for disabilities that involve some subjective element, such as migraines, fibromyalgia, and chronic pain syndrome. . . . When the plan has no [objective evidence requirement,] we evaluate the reasonableness of the decision in light of the sufficiency of the claimant's subjective evidence and the administrator's actions. Assuming that the claimant has put forward ample subjective evidence, we look at what efforts the administrator made to evaluate the veracity of her claim, particularly focusing on whether the administrator identified any objective evidence that would have proved the claim and on what kinds of independent physician evaluations it conducted. Accordingly, an administrator's decision to deny benefits would be unreasonable if it failed to identify what objective evidence the claimant could have or should have produced, even if the administrator submitted the file for peer review.

2009 U.S. App. LEXIS 1733, [WL] at *7.

52. Applying this standard, the Court of Appeals in *Creel* found that the records offered by the plaintiff to corroborate her subjective complaints of disabling headaches were sufficient to support her claim and held that the administrator's decision was both wrong and unreasonable. 2009 U.S. App. LEXIS 1733, [WL] at *8. Similarly, in *Oliver*, the plaintiff sued his employer to recover long term disability benefits based upon radiculopathy and associated cervical pain, fibromyalgia, and chronic pain syndrome. The Court of Appeals held that it was arbitrary and capricious for an employer to deny benefits for disabilities involving elements of subjective pain when the claimant provided ample evidence and the administrator never requested any additional kind of evidence. *Oliver,* 497 F.3d at

1196-97.

53. Here, Mr. Radcliffe provided extensive objective and subjective evidence of his disabilities. His medical records contain well-documented complaints of chronic lower back pain, weakness, fatigue and other symptoms as a result of his medications and constant discomfort. Although Liberty had a paid medical reviewer consider his file, the reviewer never actually examined Mr. Radcliffe, and he failed to provide any valid independent basis for his conclusion that Mr. Radcliffe is not disabled under the Plan. Here, Mr. Radcliffe has provided subjective evidence supporting his claim of disability as defined in the Plan. Accordingly, Defendant's decision to deny disability benefits was substantively unreasonable.

**D. Liberty Unreasonably Failed to Properly Consider Mr. Radcliffe's Non-Exertional Limitations.**

54. As previously stated, the Defendant presumably found that Mr. Radcliffe is capable of performing certain full-time occupations. (*See* Exhibit "N"; Exhibit "S"). However, the occupations listed require far more than the ability to perform the physical requirements of the job. In *Demirovic v. Bldg. Serv. 32 B-J Pension Fund,* 467 F.3d 208, 213-14 (2d Cir. 2006), the Court stated, "[A] reasonable interpretation of a claimant's entitlement to payments based on a claim of 'total disability' must consider the claimant's ability to pursue gainful employment in light of all the circumstances." Thus, an administrator must consider whether a

beneficiary has "the vocational capacity to perform any type of work . . . that actually exists in the national economy." *Id.* at 213-215.

55. The Court must consider a plaintiff's non-exertional limitations, including (1) intellectual and psychological limitations, including those related to the side effects of prescription medications and pain; (2) limited manual dexterity; and (3) a limited ability to remain seated for an extended period of time. Such non-exertional limitations can be important aspects of vocational capacity. *See Rabuck v. Hartford Life and Accident Ins. Co.,* 522 F. Supp. 2d 844, 876-77 (W.D. Mich. 2007) (holding that failure to consider non-strength limitations of former company president with short-term memory limitations rendered Transferable Skills Analysis "incredible").

56. Mr. Radcliffe has provided credible medical evidence that he is prescribed large amounts of pain medications, which causes extreme drowsiness. (*See* Prescription Records, attached hereto as Exhibit "U").

57. All of Mr. Radcliffe's treating physicians consistently supported his disability claim in both treatment notes and medical statements provided to Liberty. Plaintiff's secondary medical issues compound his primary problems and it was unreasonable for the Defendant to fail to properly consider the impacts of Mr. Radcliffe's non-exertional limitations in its decision.

**COUNT ONE**
**ERISA (Claim for Benefits Owed under Plan)**

58. Plaintiff hereby incorporates by reference each and every fact as if it was restated herein.

59. At all times relevant to this action, Mr. Radcliffe was a participant of the LTD Policy No. GD/GF3-850-288434-01 ("the Plan") within the meaning of 29 U.S.C. §1002(7), and was eligible to receive disability benefits under the Plan.

60. As more fully described above, the refusal to pay Mr. Radcliffe benefits under the Plan for the period from at least on or about February 15, 2018 through the present constitutes a breach of Defendant's obligations under the Plan and ERISA. Defendant's decision to deny Mr. Radcliffe's benefits constitutes an abuse of discretion as its decision was not reasonable and not based on substantial evidence.

61. Mr. Radcliffe brings this action to recover benefits due to him and to enforce his rights under the Plan pursuant to 29 U.S.C. §1132(a)(1)(B).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays the Court to enter judgment for Plaintiff and otherwise enter an Order providing that:

1. The applicable standard of review in this case is *de novo*.

2. That the Court may take and review the records of Defendant and any other evidence that it deems necessary to conduct an adequate *de novo* review;

3. That Mr. Radcliffe met the Plan's definition of "Disabled";

4. Defendant shall pay Mr. Radcliffe all properly owed past due benefits in accordance with the policy;

5. Defendant shall pay to Plaintiff such prejudgment interest as allowed by law;

6. Defendant shall pay Plaintiff's costs of litigation and any and all other reasonable costs and damages permitted by law;

7. Defendant shall pay attorney's fees for Plaintiff's counsel;

8. Plaintiff shall receive such further relief against Defendant as the Court deems lawful, just and proper.

Respectfully Submitted,

*/s/ Peter H. Burke*________________
Peter H. Burke (ASB-1992-K74P)
Pburke@burkeharvey.com
BURKE HARVEY, LLC
3535 Grandview Parkway
Suite 100
Birmingham, Alabama 35243
Phone: 205-930-9091
Fax: 205-930-9054

*Attorney for Plaintiff Richard Radcliffe*

**PLEASE SERVE DEFENDANT BY CERTIFIED MAIL AT**:

LIBERTY LIFE ASSURANCE COMPANY OF BOSTON
Corporation Service Company, Inc.
641 South Lawrence Street
Montgomery, AL 36104